UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL JASON NICKS,

      Petitioner,

v.                                                               CASE NO. 6:06-cv-1410-Orl-31UAM

JAMES MCDONOUGH, et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 15). Petitioner filed a reply to the response (Doc. No. 24).

Petitioner alleges fifteen claims for relief in his petition. As discussed below, the Court finds the petition is untimely and must be denied.

### *Procedural History*

Along with two co-defendants, Petitioner was charged by indictment with one count of first-degree murder with a firearm (count one), one count of robbery with a firearm (count two), and one count of conspiracy to commit robbery with a firearm (count three). A jury trial was conducted; and on October 7, 2002, Petitioner was found guilty as charged. The trial court sentenced Petitioner to two terms of life in prison for counts one and two, and to a fifteen-year term of imprisonment as to count three with all sentences to run concurrently.

Petitioner appealed his convictions and sentences.  On September 23, 2003, the Fifth District Court of Appeal of Florida *per curiam* affirmed.  *See Nicks v. State*, 855 So. 2d 672 (Fla. 5th DCA 2003).  Mandate was issued on October 10, 2003.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief on January 11, 2005.[1]  The state trial court denied relief on March 1, 2006.  Petitioner appealed, and the appellate court *per curiam* affirmed on July 5, 2006.  *See Nicks v. State*, 935 So. 2d 511 (Fla. 5th DCA 2006).  Mandate was issued on August 25, 2006.

While the Rule 3.850 appeal was pending, Petitioner filed a petition for writ of mandamus with the Fifth District Court of Appeal of Florida.  On April 21, 2006, the appellate court dismissed the petition for failure to pay the filing fee.

***Petitioner's Habeas Corpus Petition is Untimely***

Pursuant to 28 U.S.C. § 2244:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1]This is the filing date under the "mailbox rule."  *See Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if that the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date.").  All further references to the filing date of pleadings by Petitioner shall be the filing date under the mailbox rule, unless otherwise noted.

> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

In the present case, the appellate court entered its order of affirmance on direct appeal on September 23, 2003. Petitioner then had ninety days, or through December 22, 2003, to petition the United States Supreme Court for writ of certiorari. *See* Sup. Ct. R. 13. Thus, under § 2244(d)(1)(A), the judgment of conviction became final on December 22, 2003, and Petitioner had through December 22, 2004, absent any tolling, to file a federal habeas corpus petition. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) (holding that the one-year period of limitation does not begin to run until the ninety day period for filing a petition for certiorari with the United States Supreme Court has expired). Under the mailbox rule, the instant petition was not filed until September 12, 2006.

The Court is aware that Petitioner filed a Rule 3.850 motion and a petition for writ of mandamus; however, because the one-year period concluded before Petitioner initiated these proceedings, the tolling provision of section 2244(d)(2) does not apply to the two actions. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), *cert. denied*, 531 U.S. 991 (2000).

Petitioner asserts that the one-year period should be subject to equitable tolling based on his post-conviction attorney's conduct. Petitioner maintains that he retained an attorney to file his Rule 3.850 motion on February 17, 2004, and the attorney failed to do so. Instead, on October 27, 2004, the attorney returned the copy of Petitioner's proposed Rule 3.850 motion and his trial transcripts to him. Petitioner filed his Rule 3.850 motion on January 11, 2005.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005). Moreover, Petitioner has the burden of showing extraordinary circumstances, and this Court must "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Calderon v. United States District Court*, 128 F.3d 1283, 1289 (9th Cir. 1997), *vacated on other grounds*, 163 F. 3d 530 (9th Cir. 1998).

Petitioner's allegations simply do not rise to the level of extraordinary circumstance beyond his control which warrant equitable tolling of the one year period set forth in § 2244(d). *See Steed v. Head*, 219 F.3d 1298 (11th Cir. 2000) ("Mere attorney negligence does not justify equitable tolling. An attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling.") (citations omitted). To support his claim of equitable tolling, Petitioner submitted letters from him to his post-conviction attorney. In the letters, Petitioner expressed concern about the one-year time period for filing his federal habeas petition and the applicable federal law regarding the one-year time limitation. *See* Doc. No. 2, Exh. E at 20-22. Furthermore, Petitioner's post-conviction attorney notified him on October 27, 2004, that he would not file a Rule 3.850 motion, and returned Petitioner's draft of a Rule 3.850 motion and his trial transcripts. *See* App. G at 3; *see*

*also* Doc. No. 2, Exh. E at 8-9.  Petitioner then had until December 22, 2004, to file his Rule 3.850 motion in order to toll the one-year federal time period; however, he did not file his Rule 3.850 motion until January 11, 2005.  Thus, Petitioner has not established that he diligently pursued his rights, and equitable tolling is not applicable.

Petitioner next asserts that his petition is not time-barred because he is actually innocent of the offenses.  In his reply brief, Petitioner states that he has three pieces of evidence that establish his innocence.  First, he asserts that his own testimony establishes his innocence.  Specifically, Petitioner would testify in pertinent part that one of his co-defendants, Mario Bellamy, spoke about robbing someone using the firearm brought by the other co-defendant, Jonathan Porter, but Petitioner did not know that Bellamy would actually commit a robbery.  Petitioner further contends that he could testify, contrary to Porter's testimony, that  he did not discuss robbing anyone, had no plans to rob anyone, and did not assist in the robbery and murder of the victim.  Petitioner also asserts that had a ballistics expert been asked about the stippling[2] on the victim's left cheek, the defense's theory would have been proven, *i.e.*, that the first shot fired struck the victim on the left cheek, not behind the right ear.  As such, Petitioner contends that Porter's testimony that Petitioner held the victim against the seat would have been refuted by the ballistics evidence.  Finally, Petitioner asserts that the medical examiner could have testified about the trajectory of the bullets, thereby establishing that the victim was leaning forward, towards the weapon when he was shot, contrary to Porter's testimony that Petitioner was holding the victim against the vehicle seat when the victim was shot the first time.

---

[2]According to the medical examiner's testimony at trial, stippling is powder burn on the skin resulting from a firearm being shot at close range.  (App. B at 405-06.)

For purposes of this discussion, the Court will assume, without deciding, that a showing of actual innocence is sufficient to relieve habeas petitioners from the burdens imposed by § 2244(d).[3] "[I]n order to present a valid claim of actual innocence the petitioner must show that there is reliable 'new' evidence (i.e. not presented at trial) 'showing that it is more likely than not that no reasonable juror would have convicted him.'" *Thomas v. Straub*, 10 F. Supp. 2d 834, 836 (E.D. Mich. 1998). In the present case, Petitioner does not support his allegation of innocence with sufficient evidence to undermine the Court's confidence in the outcome of his criminal proceedings. *See Schlup v. Delo*, 513 U.S. 298, 316 (1995). Petitioner simply has not presented new, reliable evidence demonstrating his actual innocence.

With respect to his own testimony, the Court notes that Petitioner's version of the events was largely presented to the jury. Petitioner's recorded sworn statement to law enforcement was played during the trial. In his statement, Petitioner stated that Bellamy spoke of robbing someone, but that he and Porter thought Bellamy was just running his mouth and they did not think he would actually do so. (App. B at 375-79.) Petitioner additionally indicated that he did not grab the victim during the robbery. *Id.* at 379. Thus, the jury heard much of the "new" testimony that Petitioner now asserts he would have presented at trial and seemingly chose to believe the testimony of Porter.

Similarly, Petitioner's contention regarding the stippling on the victim's left cheek is unavailing. The record reflects that both the medical examiner and the State's firearm expert testified about the stippling. *See* App. B at 405-26. Thus, the jury heard testimony indicating that

---

[3]In *Wyzykowski v. Department of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000), the Eleventh Circuit Court of Appeals declined to decide whether there is an actual innocence exception to the time limitation of § 2244(d). Instead, the court stated that "the factual issue of whether the petitioner can make a showing of actual innocence should be first addressed . . . ."

the shot to the victim's face was at close range.  Moreover, contrary to Petitioner's assertion, new ballistics evidence concerning the stippling would not impeach Porter's testimony that Petitioner held the victim.  Porter testified that Petitioner pulled the victim back in the vehicle seat, but the victim was still struggling with Bellamy, who was in the passenger seat.  (App. B at 187.)  Porter stated that the victim was able to turn his head and when Bellamy fired the first shot, the victim was facing Bellamy at an angle, looking towards the gun.  *Id.* at 186.  Therefore, Porter indicated that the first gunshot was at close range, and further testimony regarding stippling would not impeach Porter's testimony.

Likewise, the medical examiner's testimony, which allegedly was not presented at trial, does not establish Petitioner's innocence.  Petitioner contends that the medical examiner could have testified about the trajectory of the bullets, thereby demonstrating that the victim was leaning towards the passenger side of the vehicle when the first shot was fired, contrary to Porter's testimony that Petitioner was holding the victim against the vehicle seat.  The record reflects that the medical examiner testified in detail about the two gunshot wounds, including their paths.  (App. B at 406-17.) Moreover, the medical examiner testified that the gunshot wound to the left side of the face was made at close range.  *Id.*  Finally, contrary to Petitioner's assertion, the medical examiner was asked whether he could determine either the position of the gun when it was fired or the position of the victim's head, and the medical examiner responded negatively.

In sum, Petitioner's evidence is not new.  Moreover, Petitioner's testimony is self-serving and the purported ballistics and bullet trajectory evidence do not unequivocally demonstrate Petitioner's innocence.  Therefore, Petitioner  does not come under the actual innocence exception, if such an exception exists.

Any of Petitioner's allegations that attempt to excuse his failure to file the instant petition within the one-year period of limitation and that are not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.      This case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 26th day of June, 2007.

Copies to:
sc 6/26
Michael Jason Nicks
Counsel of Record

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE